# SHIELDS, *Appellant,*
## *v.*
# CAMPBELL, *Respondent.*
## (No. 407-858, SC 24315)

559 P2d 1275

John Bassett, Milwaukie, argued the cause and filed briefs for appellant.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. With him on the brief were James F. Spiekerman and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before Denecke, Chief Justice, and Holman, Howell, Lent, Linde, Mengler, and Bradshaw, Justices.

LENT, J.

**LENT, J.**

This is an action for damages allegedly sustained by plaintiff as a result of negligence of the defendant, who was her attorney in earlier litigation. Plaintiff appeals from the judgment for costs and disbursements against her following a verdict for defendant.

Plaintiff and her son, Ricky, had opened a joint savings account in a branch of the United States National Bank of Oregon. Several years later, after Ricky died intestate, his widow, Lola, as personal representative of the estate, filed a declaratory judgment proceeding to determine the ownership of the balance remaining in the savings account. The bank and this plaintiff were the named defendants, but the controversy was between Ricky's personal representative and this plaintiff. Defendant was retained by this plaintiff to represent her in the litigation. The trial judge, without a jury, declared Ricky's estate to be the owner of the bank account. This plaintiff's appeal resulted in the decision of this court in *Shields v. U. S. Nat'l Bank/Shields,* 266 Or 562, 514 P2d 348 (1973), in which the judgment was affirmed.

Plaintiff filed this action against defendant, alleging that he was negligent in his representation of her in the earlier case in failing to introduce in evidence two written instruments: the original agreement and signature card signed by Ricky and plaintiff at the time the account was opened and an inheritance tax report filed by Lola as personal representative in the probate of the estate.

The signature card by its terms provided that deposits credited to the account would be payable by the bank upon order of the survivor of Ricky and plaintiff and that such deposits upon the death of one would belong to the survivor. The tax report designates plaintiff as the survivor of the savings account "carried jointly" with Ricky.

At the outset, we are confronted with plaintiff's

disregard of the requirements of Rule 6.18 of the Rules of Procedure of this court.[1] Plaintiff failed to specify those portions of the record which show the error of which she complains. Rule 6.18 is designed to assist this court in performing its function and in coping with its ever-increasing workload. We should be completely justified in refusing to consider any claimed error in this case for failure to abide by the rule. Since, however, the alleged errors are asserted to be in receiving certain evidence, plaintiff faced an impossible task in complying with Rule 6.18, for the simple reason that the evidence was received without objection and without any motion to strike after it was received.

■ Plaintiff assigns as error the "allowing into evidence and into jury room deliberations" a copy of the opinion of this court in *Shields, supra.* This exhibit was marked for identification and was offered in evidence by plaintiff. Before receiving the exhibit, the court specifically advised counsel that if the exhibit were received in evidence it would be subject to perusal by the jury.[2] Following this warning, plaintiff's counsel again offered the exhibit, and it was received without objection. Thereafter, plaintiff used

[1] "In appeals in actions at law, no alleged error of the trial court will be considered on appeal unless regularly assigned as error in the appellant's (or cross-appellant's) opening brief, except that the appellate court may take notice of errors of law apparent on the face of the record.

"Each assignment of error shall be clearly and succinctly stated under a separate and appropriate heading. The assignment of error must be specific and must set out verbatim the pertinent portions of the record. Assignments of error which the court can consider only by searching the record for the proceedings complained of will not be considered.

"The arrangement and wording of assignments of error so far as applicable, together with reference to page of the transcript or narrative statement, shall conform to illustrations in Appendix D.

"* * * * *"

Appendix D sets forth illustrations of the wording of certain of the more common assignments of error, such as are urged in this case.

[2] *See* ORS 17.320, which provides that upon retiring for deliberation the jury may take with it the exhibits.

the exhibit in her interrogation of witnesses and, in argument, stated in part as follows:

"But the second thing that you have to decide then is, assuming that this [the signature card and the tax report] would have been put into evidence, would there have been any difference in the final decision. And I would request that you carefully read through Exhibit No. 4. This is a photocopy of the Opinion of the Supreme Court. Now, I believe that the opinions of Mr. Pullen and Mr. Kennedy [defendant's experts], who testified here today as experts, that they have misread this case. And I would ask you to read it. And I think if you read it carefully, you will find, yourselves, that they have misread it."

Plaintiff continued argument by reading from portions of the exhibit. We shall not allow plaintiff who presented this evidence to avoid it upon this appeal by arguing that the evidence was not admissible and therefore should not have been considered by the jury. *See City of Salem v. Cannon,* 235 Or 463, 385 P2d 740 (1963), where we said:

"* * * We know of no rule which permits a party to introduce evidence which, at the time of introduction, appears beneficial and then when it appears that the evidence was harmful to attempt, on appeal, to renounce his own evidence. * * *" (235 Or at 464)

By way of further assignment of error, plaintiff's brief states that:

"The Court erred in allowing expert or any testimony regarding the ultimate fact before the jury and also by allowing expert witnesses to testify to the jury on their interpretation of two Oregon Supreme Court decisions * * *"

Before proceeding to a discussion of the testimony of defendant's expert witnesses, we note that plaintiff called as a witness a practicing lawyer, who gave exactly the same kind of expert and opinion testimony which plaintiff complains defendant introduced through expert witnesses. Plaintiff's expert testified he had examined the signature card and the tax report. In answer to further questioning, he testified

that a lawyer, in the exercise of reasonable care and skill, would have offered these documents in evidence during the original litigation. He was then asked to express an opinion "based upon a reasonable legal probability" whether the result at the trial level or on appeal in the earlier case would have been different had those two documents been introduced. He unequivocally opined that the result would have been different.

The plaintiff also called as a witness the judge who tried the original case, who testified that he could not tell whether the introduction of the signature card would have made any difference to his decision.

On his case in chief, the defendant offered himself and two other lawyers practicing in Portland as witnesses. During the course of the testimony of each of these witnesses, they discussed what they believed to be the state of the law concerning ownership of joint bank accounts at the time of the trial of the earlier case. These discussions were based upon the witnesses' understanding of an earlier decision of this court in *Greenwood v. Beeson,* 253 Or 318, 454 P2d 633 (1969).

Defendant, without objection from plaintiff, discussed his understanding of the *Greenwood* case to attempt to persuade the jury that the state of the law prior to the *Shields* case, in his opinion, required a finding in the earlier trial that the plaintiff here was the owner of the moneys deposited in the savings account. It appears this was for the purpose of showing that his failure to introduce the two documents was merely a mistake in judgment based upon his understanding of the law and not a failure to exercise that degree of care required of him in the circumstances.

As his next witness, defendant called the attorney who had represented Lola in the earlier case both on trial and upon appeal. This witness discussed *Greenwood* but contradicted the defendant by stating that it was the witness's understanding that *Greenwood* did not mean that the survivor automatically takes the

[ 76 ]

money upon the death of the other joint owner of a bank account. This discussion was again without objection from plaintiff. His opinion could not have been prejudicial to plaintiff, since his interpretation of *Greenwood* is the same which plaintiff urges upon us now.

As his third witness, defendant called another lawyer practicing in Portland, who did not mention the *Greenwood* case at all upon direct examination. His discussion of *Greenwood* took place only upon cross-examination by plaintiff. Plaintiff is in no position to complain about this witness's discussion of *Greenwood*. *See City of Salem v. Cannon, supra.*

■ That the party who complains of the receipt of evidence must make timely objection is not a new idea. In *Fidelity Sec. Corp. v. Brugman,* 137 Or 38, 1 P2d 131 (1931), where the appellant had made a timely objection which was overruled and sought to advance different grounds to support the objection upon appeal, we said:

> "* * * A party who seeks to exclude a piece of evidence should be explicit and disclose to the trial court all defects in the proposed proof which he expects to urge upon this court in the event of an appeal. Concealed weapons which will not be drawn upon the adversary until the appellate court is reached have no place in the trial of a cause; * * *." (137 Or at 48)

*A fortiori,* a party who makes no objection at all cannot be heard to complain to this court. A party owes the trial court the obligation of a sound, clear and articulate motion, objection or exception, so as to permit the trial judge a chance to consider the legal contention or to correct an error already made. *See, e.g., Paur v. Rose City Dodge,* 249 Or 385, 438 P2d 994 (1968); *Kinney v. General Construction Co.,* 248 Or 500, 503-504, 435 P2d 297 (1968); *LaBarge v. United Insurance Co.,* 221 Or 480, 349 P2d 822 (1960); *Hamilton v. Union Oil Company,* 216 Or 354, 339 P2d 440 (1959); *Miller v. Lillard,* 228 Or 202, 364 P2d 766 (1961). The reason for such a rule is not merely to

promote form over substance but to promote an efficient administration of justice and the saving of judicial time.

■ As to the discussion of the *Shields* case by defendant's witnesses, we again point out that plaintiff's own expert witness discussed the *Shields* case both on direct examination and on cross-examination without objection by plaintiff. The two lawyers other than himself called by defendant as witnesses likewise discussed the *Shields* opinion and their interpretation of that decision, both on direct examination without objection by plaintiff and upon cross-examination by plaintiff. In such circumstances, plaintiff cannot now be heard to assert as error the allowing of such "interpretation." To the extent that this evidence emanated from defendant's case, defendant was merely responding to like evidence introduced by plaintiff. A party eliciting evidence cannot object to the same kind of evidence introduced on behalf of the other party. *Kitchin v. Oregon Nursery Co.,* 65 Or 20, 130 P 408, 130 P 1133, 132 P 956 (1913). *See also United States National Bank v. Miller,* 119 Or 682, 688-689, 250 P 1098 (1926); *Johnson v. Bennett,* 225 Or 213, 357 P2d 527 (1960).

■ The real thrust of plaintiff's position here, however, is that these witnesses were allowed to express opinions concerning the ultimate issue and therefore invade the province of the jury. Opinions on such matters constitute perfectly permissible evidence in proper circumstances and upon proper foundation.

> "The correct rule is that an expert's fitness to answer opinion questions must first satisfy the discretion of the trial judge. The expert then may express an opinion on an ultimate fact if the ultimate fact cannot be equally well decided by the jury from the same evidence upon which the expert has based his opinion. [citations omitted] The decision whether to receive the testimony should be left to the sound discretion of the trial judge. Following the preliminary screening by the trial judge, the jury ultimately passes upon the credibility of the

[ 78 ]

witness, the soundness of his judgment, and the existence of the facts upon which his opinion was predicated. * * *" *Ritter v. Beals,* 225 Or 504 at 525, 358 P2d 1080 (1961).

*See also Rader v. Gibbons and Reed Company,* 261 Or 354, 365, 494 P2d 412 (1972), where we said, in reliance upon *Ritter, supra:*

"* * * There are also statements in these cases that a witness may not invade or usurp the province of the jury. We have rejected the notion that evidence may be objectionable as an invasion of the jury's function. Ritter v. Beals, 225 Or 504, 524-525, 358 P2d 1080 (1961). Thus opinion testimony may be admissible even though it concerns an ultimate fact to be found by the jury. * * *"

■ Since plaintiff, to prevail in this case, had to convince the trier of fact by a preponderance of the evidence that the result in the earlier trial would have been favorable to her had defendant introduced the two documents in question, we know of no other way in which the jury could have been guided in determining the issue than the presentation of opinion by properly qualified experts. This was plaintiff's own approach in the presentation of her evidence. We do not believe that this ultimate fact could be "equally well decided" by the jury from the same evidence upon which the experts based their opinions.

■■ In conclusion, plaintiff did not object, except, or move to strike the evidence complained of; therefore, she failed to preserve any record for appeal, as the trial court never had any opportunity to decide the issue or to correct any alleged error. Plaintiff herself introduced expert testimony concerning the ultimate fact, both with respect to the question of negligence and of causation, and thereby invited such evidence from defendant.

Affirmed.